MILES
v.
VANHORN.

*Thursday,
December 5.*

———•—••—•———

MILES v. VANHORN.

The word "screwed" does not of itself import sexual intercourse, but it may, in certain localities, be used to impute the charge of whoredom, and where that is the case, a complaint for slander founded upon such a use of the word should affirmatively allege its import at the time and place it is used.

The following words, spoken of an unmarried female, are slanderous, viz., "She is in the family way, and I can prove by *A.*, that she has been taking camphor and opium pills to produce an abortion."

After the jury has been sworn, and a portion of the evidence heard, in an

action for slander, it is too late for the plaintiff to amend by inserting an entire new set of words, essentially different from those previously alleged, and of themselves constituting a new cause of action.

Where, in an action for slander, the defendant, under a plea of justification, has proved facts and circumstances tending to show the truth of the charge uttered, but has not attempted to impeach the general character of the plaintiff, it is not competent for the plaintiff to introduce evidence of good character.

APPEAL from the *Blackford* Circuit Court.

DAVISON, J.—This was an action for slander, by the appellee, who was the plaintiff, against *Miles*. The complaint consists of two counts. The first alleges that the defendant, on, &c., at, &c., spoke and published of and concerning the plaintiff, and of and concerning her character for chastity, these false, slanderous and defamatory words, viz., First set of words: "There is nothing the matter with her, (meaning plaintiff,) only the boys (meaning certain boys in the neighborhood of the defendant) screwed her (the plaintiff meaning,) too much at the spelling school (meaning a spelling school then lately held in the neighborhood of the defendant); then and thereby meaning it to be understood by said words, that the plaintiff had been and was guilty of whoredom, *and it was so understood by Jesse Munroe and others who heard defendant speak said words.*"

Second set: And also these words, as a continuation of the same conversation: "There is nothing the matter with her, (meaning the plaintiff,) only she (the plaintiff meaning) has screwed the boys too much at spelling school." Then and thereby wishing it to be thought and understood that the plaintiff was and had been guilty of whoredom with said boys at said spelling school, and it was so understood by *Jesse Moore* and others at the time. Third set: "*Sarah Vanhorn* is in the family way, and I (meaning defendant) can prove by *Bob Thompson*, that she (plaintiff meaning) has been taking camphor and opium pills to produce an abortion." Then and thereby wishing to be understood that said plaintiff had been guilty of whoredom, and that she had had illicit intercourse with men, she being at the time an unmarried woman, and it was so understood by *Robert*

*Thompson* and others who heard him. And the plaintiff further says, that she is an unmarried woman, and that the defendant spoke of and concerning her, and of and concerning her character for virtue and chastity, the false, slanderous and defamatory words following, viz., Fourth set. "There is nothing the matter with her, (meaning plaintiff,) only she (plaintiff meaning) screwed the boys too much at spelling school; thereby intending it to be understood that she had been guilty of whoredom with certain unmarried men and boys, who had then lately attended a spelling school held in the neighborhood of plaintiff and defendant, and it was so understood at the time by *Jesse Moore* and divers others, good and worthy citizens, who heard him speak the words."

Defendant demurred severally to each set of words alleged in the complaint; but his demurrers to the first, second and fourth sets, were overruled; to the second, the demurrer was sustained.

The correctness of the decisions thus made, depends upon the solution of this inquiry: Does the word "*screwed*," as used in the first and fourth sets of words, of itself, impute sexual intercourse? If it does not, then the words in these sets are not actionable; because, in the complaint there is no averment that that word was used in a criminal sense; nor is the want of such averment at all supplied by the inuendo, for the reason that that branch of the pleading can not aver a fact, or change the natural meaning of words. *Hays* v. *Mitchell*, 7 Blackf. 117. The definition of "*screwed*," as given in Webster's Dictionary, is, "Fastened with screws, pressed with screws, forced." This is no doubt the ordinary and correct import of the word. It may, however, when spoken in certain localities, involve the charge of whoredom; but when that occurs, the pleading founded upon it, as slanderous, should affirmatively allege its import at the time and place it is used. The appellee refers to *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339; but that authority does not favor his view of the question; because, there the word "screwed" was alleged in the complaint to have a provincial meaning; and that, at the time when, and place where, it was spoken, it meant sexual intercourse. So, in *Hays* v. *Mitchell, supra*,

Nov. Term, 1861.

MILES
v.
VANHORN.

the words, "You hooked my geese," were adjudged not actionable, *per se;* but, at the same time, it was held competent for the plaintiff, in his pleading, to have made them express a criminal charge. We are referred to *Shie'ds* v. *Cunningham*, 1 Blackf. 86. In that case, the words, leaving out the inuendoes, were charged in this form: "Doctor *Eddy* made an appointment with *E izabeth Cunningham*, scaled the walls, and went to bed to her at Mrs. *Reperton's* house." These words were held actionable, *per se;* but that decision is plainly inapplicable to the case at bar; because *there* the words charged fairly impute sexual intercourse, while in this instance, the word in question, in its ordinary import, conveys no such imputation. *Angle* v. *Alexander*, 20 Eng. Com. Law, 71. The demurrers to the first and fourth sets of words were doubtless well taken. We think, however, that the third set are, as alleged, clearly actionable. It follows, the demurrer to that set was correctly overruled.

Defendant's answer contains two paragraphs: 1. A general traverse; 2. Justification. There was a verdict for the plaintiff, upon which the Court, having refused a new trial, rendered judgment.

While the trial was in progress, and after a portion of the evidence was given to the jury, the plaintiff moved for leave to amend her complaint, as follows: "And again these words, as spoken by *Phœbe Miles*, the defendant's wife, and at the time sanctioned by him, to wit: '*Robert Thompson* has given camphor and opium pills to *Isaac Vanhorn's* wife, to doctor away a young one; and now he has given them to *Sarah Vanhorn*, (meaning plaintiff,) also to doctor away a young one;' and as an indorsement of the words thus spoken by his wife, the defendant said 'it is so, for *Bob*,' meaning said *Robert*, 'has given them to more than forty others;' thereby meaning to charge the plaintiff with whoredom and murder, and he was so understood by one *John Vanhorn*, who heard the words spoken.'" This motion, though resisted by the defendant, was sustained by the Court, and the plaintiff was allowed so to amend her complaint. We have a statutory rule of practice which says, that " the Court may at any time, in its discretion, and

on such terms as may be deemed proper, direct ..... any Nov. Term, material allegation to be inserted, struck out, or modified, to **1861.** conform the pleadings to the facts proved, when the amend- Miles ment does not substantially change the claim or defense." v. Vanhorn. 2 R. S., § 99, p. 48.

The appellee, in support of the motion for leave, &c., re-lies on *Lister* v. *McNeal*, 12 Ind. 302. But that decision, it seems to us, is not in point. There, the words charged in the original complaint were, " Old *Jane White* caught *Elzy White* and the girl, *Lisle Chapman*, (meaning the plaintiff *Delilah*,) in the barn, at the thing itself." The Circuit Court allowed the plaintiff, during the trial, to insert immediately before " Old," the words " *George Dean* said," and to strike out the name "*Lisle Chapman*," and this Court sustained its rulings. These amendments were obviously within the dis-cretionary power of the Court; they modified, it is true, the set of words originally charged, but produced no material change in the complaint. But here, the amendment allowed embraces an entire new set of words, essentially differing from those previously alleged, and of themselves constitut-ing a new cause of action. Such an amendment, in our judgment, is unauthorized by the statute.

In the record, there is a bill of exceptions which states "That the defendant, upon the trial, introduced evidence in support of his plea of justification, but gave no evidence touching the general character of the plaintiff, and having closed his testimony, the plaintiff produced one *Mary Munroe*, to whom she, plaintiff, propounded the question, whether she, witness, was acquainted with the general character of the plaintiff? To this inquiry the defendant objected, but his objection was overruled, and the witness testified that the plaintiff's general character was good, &c. In civil cases the general rule is, that evidence in support of the character of either party is inadmissible, until there has been an attempt, by evidence, to impeach it. 1 Phil. Ev., 4 Am. Ed. pp. 757–760, note 199. But it is argued that as the evidence in the present case is not in the record, this Court, in support of the ruling of the lower Court, will presume that evidence tending to impeach the plaintiff's

Nov. Term,
1861.

character was given by the defendant, upon his plea of justification. We are not, in this instance, inclined to indulge any such presumption. The bill of exception alleges affirmatively, that no such evidence was given, and in view of that allegation it must be so intended. But the point under discussion is settled by authority. *McCabe* v. *Plaiter*, 6 Blackf. 405, was an action by a *feme sole* for words charging her with fornication. Pleas: 1. Not guilty. 2. That the words were true. After the defendant had, in the Circuit Court, closed his testimony, he having given no evidence to impeach the plaintiff's character, she offered to prove her general character to be good; the defendant objected, but his objection was overruled. Held, by this Court, that the evidence was inadmissible, and that the objection should have been sustained. So in *Houghtaling* v. *Kilderhouse*, 1 Comstock, 53, it was ruled that "in an action for slander, where the defendant, under a plea of justification, has proved facts and circumstances tending to show the truth of the charge uttered, it is not competent for the plaintiff, in reply to · such testimony, to introduce evidence of his good character." See, also, *Cornwall* v. *Richardson*, 1 Ryan & Moody, 305; *Gough* v. *St. John*, 16 Wend. 646. These authorities are decisive that the evidence in question should have been rejected.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*H. S. Kelley*, *A. J. Neff* and *Walter March*, for the appellant.

*D. Nation*, *A. Steele* and *H. D. Thompson*, for the appellee.